UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| THE KROGER CO. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **COMPLAINT**

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## **STATEMENT OF THE CASE**

1. Defendant ("Kroger" or "Defendant") owns and operates approximately 2,700 grocery stores across the United States, including stores in this judicial district.

2. Kroger uses ozone-depleting substances ("ODS") in some of its commercial refrigeration appliances to chill its food display cases, in some of its industrial process refrigeration appliances to manufacture food products, and in some of its comfort cooling appliances to cool its stores.

3. Once ODS are released at the Earth's surface, they migrate upwards to the stratosphere, where ultraviolet ("UV") radiation from the sun converts them into reactive gases that destroy ozone.

4. The depletion of ozone results in less protection from the sun's rays and more exposure to UVB radiation, which can cause the development of skin cancer and cataracts.

5.     Kroger has failed to properly manage the use of ozone-depleting refrigerants at certain of its stores and manufacturing facilities and thus emitted more ODS than permitted under applicable regulations set forth in 40 C.F.R. Part 82, Subpart F, §§ 82.150-82.169 (Recycling and Emission Reduction) (Subpart F Regulations) promulgated pursuant to Section 608 of the Act, 42 U.S.C.§ 7671g.

6.     This is a civil action brought against Kroger for violations of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7401-7671q.

7.     The United States seeks injunctive relief and the assessment of civil penalties for violations of Section 608 of the Act, 42 U.S.C. § 7671g (National Recycling and Emission Reduction Program), and the commercial and industrial process refrigerant repair and recordkeeping regulations promulgated thereunder, set forth in the Subpart F Regulations, related to Kroger's failure to properly manage the use of ozone-depleting refrigerants in its stores.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

9.     Venue is proper in this district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because some of the violations alleged in the Complaint occurred in, and Defendant conducts business in, this judicial district.

## NOTICE AND AUTHORITY

10.     The United States Department of Justice has authority to bring this action on behalf of the Administrator of EPA pursuant to 28 U.S.C. §§ 516 and 519, and Section 305(a) of the Act, 42 U.S.C. § 7605(a).

COMPLAINT—United States v. The Kroger Co. (S.D. Ohio)

11.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), notice of the commencement of this action has been given to the air pollution control agency for each state in which the violations in this Complaint are alleged to have occurred.

## DEFENDANT

12.     Defendant, a publicly traded Ohio corporation with its headquarters in Cincinnati, Ohio, is a "person" as defined at Section 302(e) of the Act, 42 U.S.C. § 7602(e), and 40 C.F.R. § 82.152, and within the meaning ascribed under Section 113 of the Act, 42 U.S.C. § 7413.

13.     Defendant is a retail grocery chain that uses commercial refrigeration appliances, comfort cooling appliances, and industrial process refrigeration appliances, as defined in 40 C.F.R. § 82.152, to chill its food display cases and manufacture food for sale in its stores.

## STATUTORY AND REGULATORY BACKGROUND

14.     Title VI of the Clean Air Act mandates the elimination or control of emissions of ODS, including chlorofluorocarbons ("CFCs") and hydrochlorofluorocarbons ("HCFCs"). 42 U.S.C. §§ 7671-7671q.

15.     Section 608 of Title VI of the Act, 42 U.S.C. § 7671g, requires EPA to promulgate regulations establishing standards and requirements regarding the use and disposal of class I and class II substances during the service, repair, or disposal of appliances and industrial process refrigeration.

16.     These Subpart F Regulations are codified at 40 C.F.R. Part 82, Subpart F, §§ 82.150-82.169 and were promulgated at 58 Fed. Reg. 28,660 (May 14, 1993), as amended at 59 Fed. Reg. 42,950 (Aug. 19, 1994), 59 Fed. Reg. 55,912 (Nov. 9, 1994), 60 Fed. Reg. 40,420 (Aug. 8, 1995), 68 Fed. Reg. 43,786 (July 24, 2003), 69 Fed. Reg. 11,946 (Mar. 12, 2004), 70 Fed. Reg. 1972 (Jan. 11, 2005), and 81 Fed. Reg. 82,272 (Nov. 18, 2016).

COMPLAINT—United States v. The Kroger Co. (S.D. Ohio)

A.      **Leak Repair Requirements**

17.     The Clean Air Act classifies CFCs as class I refrigerants and HCFCs as class II refrigerants.

18.     The Subpart F Regulations include leak repair requirements for commercial and industrial process refrigeration appliances that use ODS.

19.     "Appliance" means "any device which contains and uses a class I or class II substance as a refrigerant and which is used for household or commercial purposes, including any air conditioner, motor vehicle air conditioner, refrigerator, chiller, or freezer." 42 U.S.C. § 7671(1); 40 C.F.R. § 82.152 (2016). Effective Jan. 1, 2017, "appliance" also includes any device which contains and uses substitute refrigerants. 40 C.F.R. § 82.152 (2017).

20.     "Comfort cooling" means "air-conditioning appliances used to provide cooling in order to control heat and/or humidity in occupied facilities." 40 C.F.R. § 82.152 (2017).

21.     "Commercial refrigeration" means "the refrigeration appliances utilized in the retail food and cold storage warehouse sectors. Retail food appliances include the refrigeration equipment found in supermarkets, convenience stores, restaurants, and other food service establishments. Cold storage includes the equipment used to store meat, produce, dairy products, and other perishable goods." 40 C.F.R. § 82.152; *see also* 40 C.F.R. § 82.156(j).

22.     "Industrial process refrigeration" means "complex customized appliances that are directly linked to the processes used in, for example, the chemical, pharmaceutical, petrochemical, and manufacturing industries." 40 C.F.R. §§ 82.152, 82.156(j).

23.     "Leak rate" means the rate at which an appliance is losing refrigerant, measured between refrigerant charges. The leak rate is expressed in terms of the percentage of the appliance's full charge that would be lost over a 12-month period if the current rate of loss were

to continue over that period. The leak rate is calculated using either an annualizing method or rolling average method. 40 C.F.R. §§ 82.152, 82.156(j).

24. "Refrigerant" means "any substance, including blends and mixtures, consisting in part or whole of a class I or class II ozone-depleting substance or substitute that is used for heat transfer purposes and provides a cooling effect." 40 C.F.R. § 82.152; *see also* 40 C.F.R. § 82.156(j).

25. "Full charge" means the amount of refrigerant required for normal appliance operation as determined by using one or a combination of the following methods:

   i.   Use of the equipment manufacturer's determination of the full charge;

   ii.  Use of appropriate calculations based on component sizes, density of refrigerant, volume of piping, and other relevant considerations;

   iii. Use of actual measurements of the amount of refrigerant added to or evacuated from the appliance, including for seasonal variance; and/or

   iv.  Use of an established range based on the best available data regarding the normal operating characteristics and conditions for the appliance, where the midpoint of the range will serve as the full charge.

40 C.F.R. § 82.152; *see also* 40 C.F. R. § 82.156(j).

**Leak Repair Requirements Pre-January 1, 2019**

26. Prior to January 1, 2019, the leak repair regulations applied to owners and operators of commercial and industrial refrigeration appliances normally containing more than 50 pounds of refrigerant. 40 C.F.R. § 82.156(i).

27. For commercial and industrial process refrigeration appliances, the owner or operator must take action where the annual leak rate exceeds 35 percent. Within 30 days of when the owner or operator discovers (or should have discovered a leak if the owners intentionally shielded themselves from information which would have revealed a leak), the owner or operator must either (i) repair the leak so that the annual leak rate is below 35 percent or (ii) prepare and

implement a plan to retrofit or retire the appliance within one year of the plan's date. 40 C.F.R. § 82.156(i)(1), (6), (9).

28.     Pursuant to 40 C.F.R. § 82.156(i)(3), upon conclusion of repairs to a leaking industrial process refrigeration appliance, the owner or operator must perform an initial verification test demonstrating that the leaks have been repaired. The owner or operator must conduct a follow-up verification leak test, in accordance with 40 C.F.R. §§ 82.152, 82.156(j), within thirty days following the initial verification test. 40 C.F.R. §§ 82.156(i)(3), (j); 82.152.

29.     If the follow-up verification test reveals that the annual leak rate is more than 35 percent, the owner or operator must (1) notify EPA within 30 days of the follow-up verification test of the failed follow-up verification test in accordance with 40 C.F.R. § 82.166(n), and (2) prepare a plan to retrofit or retire the appliance within 30 days of the failed follow-up verification test and complete the retrofit or retirement within one year of the plan's date. 40 C.F.R. § 82.156(i)(3), (6), (9).

**Leak Repair Requirements Post-January 1, 2019**

30.     Effective January 1, 2019, the leak repair regulations apply to appliances with a full charge of 50 or more pounds of refrigerant. 40 C.F.R. § 82.157(a).

31.     For commercial refrigeration appliances, the owner or operator must take action where the annual leak rate exceeds 20 percent. Within 30 days of when refrigerant is added to an appliance exceeding the applicable leak rate, the owner or operator must either (i) identify and repair the leak so that the annual leak rate is below 20 percent or (ii) create a one-year retrofit or retirement plan. 40 C.F.R. § 82.157(c), (d), (h).

32.     For industrial process refrigeration appliances, the owner or operator must take action where the annual leak rate exceeds 30 percent. Within 30 days of when refrigerant is added to an appliance exceeding the applicable leak rate, the owner or operator must either (i)

COMPLAINT—United States v. The Kroger Co. (S.D. Ohio)

identify and repair the leak so that the annual leak rate is below 30 percent or (ii) create a one-year retrofit or retirement plan. 40 C.F.R. § 82.157(c), (d), (h).

33.     For both commercial and industrial process refrigeration appliances, leaks will be presumed to be repaired if there is no further refrigerant addition for 12 months after the repair or if leak inspections performed in accordance with 40 C.F.R. § 82.157(g) do not find any leaks in the appliance. 40 C.F.R. § 82.157(d)(2).

34.     For commercial and industrial process refrigeration appliances, repair of leaks must be documented by both an initial and a follow-up verification test or tests. 40 C.F.R. § 82.157(d)(2).

35.     Leak inspections are required for appliances that exceed the leak rate. 40 C.F.R. § 82.157(g).

36.     During a leak inspection, all visible and accessible components of an appliance must be inspected. 40 C.F.R. § 82.157(g)(3).

**B.      Recordkeeping Requirements**

37.     To ensure that owners and operators can determine when they must act under the leak repair requirements, the Subpart F Regulations also impose recordkeeping requirements for commercial and industrial process refrigeration appliances normally containing 50 or more pounds of refrigerant.

**Recordkeeping Requirements Pre-January 1, 2019**

38.     Prior to January 1, 2019, the applicable recordkeeping provisions required owners or operators to keep servicing records of appliances containing more than 50 pounds of refrigerant for a minimum of three years. Those records must document the date and type of service, as well as the quantity of refrigerant added. 40 C.F.R. § 82.166(k).

COMPLAINT—United States v. The Kroger Co. (S.D. Ohio)

**Recordkeeping Requirements Post-January 1, 2019**

39.     Effective January 1, 2019, the owner or operator must maintain a record for each time an appliance with a full charge of 50 or more pounds is maintained, serviced, repaired, or disposed of for three years. The record must include:

i.      The identity and location of the appliance;

ii.     The date of the maintenance, service, repair, or disposal performed;

iii.    The part(s) of the appliance being maintained, serviced, repaired, or disposed;

iv.     The type of maintenance, service, repair, or disposal performed for each part;

v.      The name of the person performing the maintenance, service, repair, or disposal;

vi.     The amount and type of refrigerant added to the appliance;

vii.    The full charge of the appliance; and

viii.   The leak rate and the method used to determine the leak rate (with some exceptions).

40 C.F.R. § 82.157(l)(2).

40.     Effective January 1, 2019, owners or operators are required to keep records for three years of leak inspections that include the date of inspection, the method(s) used to conduct the leak inspection, the location of each leak that was identified, and a certification that all visible and accessible parts of the appliance were inspected. 40 C.F.R. § 82.157(l)(3).

41.     Effective January 1, 2019, owners and operators must maintain records for three years of the dates and results of all initial and follow-up verification tests. Records must include the location of the appliance, the date(s) of the verification tests, the location(s) of all repaired

COMPLAINT—United States v. The Kroger Co. (S.D. Ohio)

leaks that were tested, the type(s) of verification test(s) used, and the results of those tests. 40 C.F.R. § 82.157(l)(5).

42.     Owners or operators are required to maintain retrofit or retirement plans for three years. 40 C.F.R. § 82.157(l)(6).

**C.      Enforcement Provisions**

43.     The Clean Air Act authorizes EPA to bring a civil action against any person who has violated any requirement of Title VI of the Clean Air Act or its implementing regulations. 42 U.S.C. § 7413(a)(3)(C) and 7413(b)(2).

44.     Any person who violates Title VI of the Clean Air Act is subject to civil penalties of up to $124,426 per day for each violation occurring after November 2, 2015, and assessed on or after January 8, 2025. 42 U.S.C. § 7413(b); 40 C.F.R. § 19.4.

**FACTUAL ALLEGATIONS**

45.     Defendant owns or operates commercial refrigeration appliances to chill its food display cases at many of its approximately 2,700 stores across the United States.

46.     Defendant owns or operates industrial process refrigeration appliances at some of its manufacturing facilities in the United States.

47.     Some of Defendant's commercial refrigeration appliances, including those identified in Exhibits A and B, use HCFCs, a class II refrigerant.

48.     On August 8, 2018, EPA issued an information request to Defendant pursuant to 42 U.S.C. § 7414(a), requesting a list of all comfort cooling appliances, commercial refrigeration appliances, and industrial process refrigeration appliances normally containing more than 50 pounds of a class I or class II ozone-depleting substance at all stores or manufacturing facilities owned or operated by Defendant or any of its subsidiaries ("First Information Request").

COMPLAINT—United States v. The Kroger Co. (S.D. Ohio)

49.    On October 9, 2018, Defendant submitted its responses to the First Information Request, identifying 4,646 commercial refrigeration and industrial process refrigeration appliances and comfort cooling appliances that used refrigerants regulated under the Subpart F Regulations and identifying the full charge of each appliance.

50.    As of April 29, 2026, Defendant informed EPA that it owns and operates 24,627 commercial refrigeration and comfort cooling appliances across 2,734 stores that are subject to the Subpart F regulations.

51.    On March 4, 2019, EPA issued a second information request pursuant to 42 U.S.C. § 7414, requesting detailed information regarding the addition of class I or class II ozone-depleting substances during the previous four- and one-half year period, the refrigerant leak rate and formula used, and retrofit or retirement plans for comfort cooling, commercial refrigeration, and industrial process refrigeration appliances located at 120 stores and manufacturing facilities ("Second Information Request") containing full charge of at least 50 pounds of refrigerant.

52.    Prior to January 1, 2019, Defendant owned and operated commercial refrigeration and industrial process refrigeration appliances and comfort cooling appliances, including those identified in Exhibits A and B, containing at least 50 pounds of refrigerant at full charge.

53.    After January 1, 2019, Defendant owned and operated commercial refrigeration and industrial process refrigeration appliances and comfort cooling appliances, including those identified in Exhibits A and B, with a full charge of 50 or more pounds of refrigerant.

54.    Defendant uses the annualizing method to calculate leak rate.

55.    Many of Defendant's commercial refrigeration appliances are "appliances" within the meaning of Section 601(1) of the Act, 42 U.S.C. § 7671(1), and/or 40 C.F.R. § 82.152 (2016) and 40 C.F.R. § 82.152 (2017), and "commercial refrigeration" equipment within the meaning of 40 C.F.R. § 82.152.

COMPLAINT—United States v. The Kroger Co. (S.D. Ohio)

56.     The United States issued to Defendant a Finding of Violation under Section 113(a)(1) of the Clean Air Act, 42 U.S.C. § 7671(a)(1) on March 31, 2020.

## FIRST CLAIM FOR RELIEF
### Failure to Repair Leaking Appliances, 40 C.F.R. §§ 82.156(i) and 82.157

57.     Paragraphs 1 through 56 are realleged and incorporated herein by reference.

58.     Defendant owns and operates each "commercial refrigeration" appliance identified in Exhibit A within the meaning of 40 C.F.R. §§ 82.152 and 82.156(j).

59.     Defendant's commercial refrigeration appliances identified in Exhibit A are "appliances" within the meaning of 42 U.S.C. § 7671(1) and 40 C.F.R. §§ 82.152 and 82.156(j).

60.     Defendant owns and operates each "industrial process refrigeration" appliance identified in Exhibit A within the meaning of 40 C.F.R. §§ 82.152 and 82.156(j).

61.     Defendant's industrial process refrigeration appliances identified in Exhibit A are "appliances" within the meaning of 42 U.S.C. § 7671(1) and 40 C.F.R. §§ 82.152 and 82.156(j).

**Pre-2019 Violations**

### Commercial Refrigeration

62.     On at least 14 occasions before January 1, 2019, Defendant discovered a refrigerant leak in a commercial refrigeration appliance at a time when such appliance had an annual leak rate in excess of 35 percent. *See* Exhibit A.

63.     Defendant failed to either (i) repair the leaks in the appliance within 30 days of discovery and bring the annual leak rate below 35 percent or (ii) prepare and implement a plan to retrofit or retire the appliance, in violation of 40 C.F.R. § 82.156(i)(1) and (9).

**Industrial Process Refrigeration**

64. On at least 2 occasions before January 1, 2019, Defendant discovered a refrigerant leak in an industrial process refrigeration appliance at a time when such appliance had an annual leak rate of more than 35 percent. *See* Exhibit A.

65. Defendant failed to either (i) repair the leaks in the appliance within 30 days of discovery and bring the annual leak rate below 35 percent or (ii) prepare a one-year plan for retrofit or retirement for the appliance, in violation of 40 C.F.R. § 82.156(i)(1) and (9).

**Violations Beginning January 1, 2019—Commercial Refrigeration**

66. On at least six occasions on or after January 1, 2019, refrigerant was added to a commercial refrigeration appliance owned and operated by Defendant that caused the appliance to exceed the applicable leak rate of 20 percent. *See* Exhibit A.

67. Defendant failed to either (i) repair the appliance such that the leak rate was brought below 20 percent within 30 days of when the refrigerant was added or (ii) prepare a one-year plan for retrofit or retirement for the appliance, in violation of 40 C.F.R. § 82.157(c), (d), and (h).

68. Unless enjoined, the types of violations alleged in this Claim will continue.

69. The violations set forth above subject Defendant to injunctive relief and a civil penalty of up to $124,426 per day for each violation. 42 U.S.C. § 7413(b); 40 C.F.R. § 19.4.

### SECOND CLAIM FOR RELIEF
**Failure to Maintain Adequate Servicing Records,
40 C.F.R. § 82.166(k) and (m)**

70. Paragraphs 1 through 56 are realleged and incorporated herein by reference.

71. Defendant owns and operates each "commercial refrigeration" appliance identified in Exhibit B within the meaning of 40 C.F.R. §§ 82.152 and 82.156(j).

12
COMPLAINT—United States v. The Kroger Co. (S.D. Ohio)

72. Defendant's commercial refrigeration appliances identified in Exhibit B are "appliances" within the meaning of 42 U.S.C. § 7671(1) and 40 C.F.R. §§ 82.152 and 82.156(j).

73. On at least 17 occasions, Defendant failed to keep records documenting the quantity of refrigerant added to an appliance in violation 40 C.F.R. § 82.166(k) and/or to maintain such records for at least three years in violation of 40 C.F.R. § 82.166(m). *See* Exhibit B.

74. Unless enjoined, the types of violations alleged in this Claim will continue.

75. The violations set forth above subject Defendant to injunctive relief and a civil penalty of up to $124,426 per day for each violation. 42 U.S.C. § 7413(b); 40 C.F.R. § 19.4.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States, respectfully requests that this Court:

1. Order Defendant to take appropriate action to remedy and prevent violations of Section 608 of the Act, 42 U.S.C. § 7671g, and the regulations promulgated thereunder, 40 C.F.R. Part 82, Subpart F, at its stores, including steps to mitigate emissions associated with the violations alleged above;

2. Assess civil penalties against Defendant of up to $124,426 per day for each violation per day.

3. Award the United States its costs and expenses incurred in this action; and

4.      Grant such other relief as this Court deems just and proper.

Respectfully submitted,

THE UNITED STATES OF AMERICA

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division


__s/Steven D. Ellis_____
STEVEN D. ELLIS (Colo. #12255)
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington DC 20044-7611
steven.ellis@usdoj.gov


Elyse Voyen
Associate Regional Counsel
Gillian Asque
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604

COMPLAINT—United States v. The Kroger Co. (S.D. Ohio)