IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| THE KROGER CO., | ) |
| | ) |
| Defendant. | ) |
| | ) |

CONSENT DECREE

**TABLE OF CONTENTS**

I.    JURISDICTION, VENUE, AND NOTICE ................................................................ 5

II.    APPLICABILITY ...................................................................................................... 6

III.    OBJECTIVES ........................................................................................................... 6

IV.    DEFINITIONS .......................................................................................................... 7

V.    CIVIL PENALTY .................................................................................................... 12

VI.    COMPLIANCE REQUIREMENTS ....................................................................... 14

    A.    Refrigerant Compliance Management Plan ................................................... 14

    B.    Company-Wide Average ODS Leak Rate ..................................................... 15

    C.    Initial Response Actions ................................................................................ 17

    D.    Transfer of Existing Commercial Refrigeration Appliances, Existing Comfort Cooling Appliances, and Existing Industrial Process Refrigeration Units and Conversion to Advanced Refrigerants ......................................................................................... 17

    E.    New Commercial Refrigeration Appliances, New Industrial Process Refrigeration Units, Major Remodels, and Additional Upgrades ......................................................... 18

VII.    PARTICIPATION IN GREENCHILL PROGRAM .............................................. 19

VIII.    REPORTING REQUIREMENTS .......................................................................... 20

IX.    STIPULATED PENALTIES ................................................................................... 23

X.    FORCE MAJEURE ................................................................................................ 27

XI.    DISPUTE RESOLUTION ...................................................................................... 29

XII.    INFORMATION COLLECTION AND RETENTION ......................................... 31

XIII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ............................... 33

XIV.    COSTS .................................................................................................................... 35

XV.    NOTICES ................................................................................................................ 35

XVI.    EFFECTIVE DATE ................................................................................................ 37

XVII.    RETENTION OF JURISDICTION ........................................................................ 37

XVIII.    MODIFICATION .................................................................................................... 37

XIX.    TERMINATION ..................................................................................................... 38

XX.    PUBLIC PARTICIPATION ................................................................................... 38

XXI.    SIGNATORIES/SERVICE .................................................................................... 39

XXII.    INTEGRATION ...................................................................................................... 39

XXIII.    FINAL JUDGMENT .............................................................................................. 39

XXIV.  APPENDICES ......................................................................................................... 40

    APPENDIX A: Company-Wide Average Leak Rate Formula ......................................... 40

    APPENDIX B: Wholly Owned Entities Included Within Definition of "Defendants".... 40

    APPENDIX C: Refrigerant Compliance Management Plan ........................................... 40

    APPENDIX D: List of Completed Initial Response Actions .......................................... 40

    APPENDIX E: List of All Stores as of the Date of Lodging........................................... 40

    APPENDIX F: Existing Commercial Refrigeration Units and Existing Comfort Cooling
    Appliances...................................................................................................................... 40

    APPENDIX G: List of Manufacturing Facilities as of the Date of Lodging ……………40


XXV.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION............................................. 40

WHEREAS, Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree alleging that Defendant The Kroger Co. ("Defendant") violated Section 608 of the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. § 7671g, and the Recycling and Emission Reduction regulations promulgated thereunder at 40 C.F.R. Part 82, Subpart F, 58 Fed. Reg. 28,660, 28,712 (May 14, 1993), and under EPA's amended Subpart F Regulations, 81 Fed. Reg. 82,272 (Nov. 18, 2016), effective January 1, 2019 (both sets of regulations are referred to herein as the "Subpart F Regulations"). The Complaint alleges that Defendant, as defined below, violated both the 1993 and 2016 versions of the Subpart F Regulations.

WHEREAS, the Complaint alleges that Defendant has failed to comply with the leak repair and/or recordkeeping requirements of the Subpart F Regulations at certain Stores and Manufacturing Facilities identified in the Complaint.

WHEREAS, on August 8, 2018, EPA issued an information request ("First Information Request") to Defendant pursuant to Section 114 of the Act, 42 U.S.C. § 7414, requesting a list of all comfort cooling appliances, commercial refrigeration appliances, and industrial process refrigeration units normally containing more than 50 pounds of a Class I or Class II ozone-depleting substance at all stores or manufacturing facilities owned or operated by Defendant or any of its subsidiaries.

WHEREAS, on October 9, 2018, Defendant submitted its responses to the First Information Request, identifying 4,646 comfort cooling appliances, commercial refrigeration appliances, and industrial process refrigeration units that used refrigerants regulated under the Subpart F Regulations.

3

WHEREAS, on March 4, 2019, EPA issued a second information request pursuant to Section 114 of the Act, 42 U.S.C. § 7414, requesting detailed information regarding the addition of Class I or Class II ozone-depleting substances during a four and one half year period, the refrigerant leak rate and formula used, and retrofit or retirement plans for 120 stores and manufacturing facilities ("Second Information Request").

WHEREAS, on April 14, 2019, and June 11, 2019, Defendant submitted its responses to the Second Information Request for the manufacturing facilities and stores, respectively. This response included over 6,000 records.

WHEREAS, on April 7, 2020, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a)(1), EPA issued a Finding of Violation ("FOV") asserting that Defendant committed violations of the Subpart F Regulations at its stores and manufacturing facilities.

WHEREAS, since issuance of the FOV, the Parties exchanged information on the nature and extent of the alleged violations cited in the FOV.

WHEREAS, pursuant to an agreement with EPA, Defendant submitted a self-evaluation plan to conduct a comprehensive evaluation of refrigeration appliances at all grocery stores under its ownership and/or operation, including those at which the violations alleged in the Complaint occurred ("Self-Evaluation").

WHEREAS, based on the Self-Evaluation, on November 20, 2020, Defendant submitted to EPA a report identifying proposed response actions for each appliance at the evaluated grocery stores that had eight or more leaks within the 24-month period from July 1, 2018, to June 30, 2020, and for which the cumulative leak rate was greater than 75% during that period ("Self-Evaluation Report").

WHEREAS, prior to lodging of this Consent Decree, Defendant completed each of the response actions identified in the Self-Evaluation Report.

WHEREAS, Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication of or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION, VENUE, AND NOTICE

1. This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355. Venue lies in this district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because some of the violations alleged in the Complaint occurred in, and Defendant conducts business in, this judicial district. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree and any such action and over Defendant and consents to venue in this district.

2. For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 608 of the Clean Air Act, 42 U.S.C. § 7671g.

5

3.     The United States has given notice of the commencement of this action to the applicable state air pollution control agencies as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## II.     APPLICABILITY

4.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and its successors and assigns, or other entities or persons otherwise bound by law.

5.     Defendant shall provide a copy of this Consent Decree, which may be provided electronically, to all officers, employees, and agents of Defendant whose duties might reasonably include compliance with any provision of this Decree.

6.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of Defendant's officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.     OBJECTIVES

7.     The objectives of this Consent Decree are: (i) to further the goals of ensuring compliance with Subchapter VI of the Act, 42 U.S.C. §§ 7671-7671q, and the commercial refrigerant repair and recordkeeping regulations of EPA's Subpart F Regulations, through the implementation of the injunctive relief set forth in Section VI (Compliance Requirements) by improving Defendant's Refrigerant emissions management and recordkeeping systems while also minimizing the release of substances with a GWP Value of over 1400, and (ii) to resolve the civil claims of the United States as provided in Section XIII (Effect of Settlement/Reservation of Rights).

## IV.    DEFINITIONS

8.    Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations as of the Date of Lodging of this Consent Decree, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Additional Upgrades" shall have the definition provided in Paragraph 22;

b.    "Advanced Refrigerant(s)" shall mean any Refrigerant that does not contain ozone-depleting substances, has a GWP Value of 1400 or less, and found acceptable by EPA's Significant New Alternatives Policy Program set forth at 40 C.F.R. Part 82, Subpart G, or otherwise is an equivalent refrigerant approved by EPA for use under the terms of this Consent Decree;

c.    "Complaint" shall mean the complaint filed by the United States in this action;

d.    "Company-Wide Average Leak Rate" for a given RY shall mean the sum of the total number of pounds of Refrigerant added to all Covered Refrigeration Equipment at all Stores and Manufacturing Facilities during the period of Defendant's ownership or operation of such Stores and Manufacturing Facilities in such RY, divided by the total Full Charge (in pounds) of all Covered Refrigeration Equipment at all Stores and Manufacturing Facilities owned or operated by Defendant in such RY, as calculated using the Company-Wide Average Leak Rate formula in Appendix A (Company-Wide Average Leak Rate Formula), which is attached to and incorporated into this Consent Decree.  For purposes of this definition,

7

Company-Wide Average Leak Rate shall not include Refrigerant added to Covered Refrigeration Equipment that Defendant acquires, newly leases, or begins to operate after the Date of Lodging;

e.      "Company-Wide Average ODS Leak Rate" for a given RY shall mean the sum of the total number of pounds of Class I or Class II ozone-depleting substances (or blends containing a Class I or Class II ozone-depleting substance) added to all Covered Refrigeration Equipment containing Class I or Class II ozone-depleting substances (or blends containing a Class I or Class II ozone-depleting substance) at all Stores and Manufacturing Facilities during the period of Defendant's ownership or operation of such Stores and Manufacturing Facilities in such RY, divided by the total full charge (in pounds) of all Covered Refrigeration Equipment containing Class I or Class II ozone-depleting substances (or blends containing a Class I or Class II ozone-depleting substance) at all Stores and Manufacturing Facilities owned or operated by Defendant in such RY, as calculated using the Company-Wide Average ODS Leak Rate Formula in Appendix A. For purposes of this definition, Company-Wide Average ODS Leak Rate shall not include Class I or Class II ozone-depleting substances added to Covered Refrigeration Equipment that Defendant acquires, newly leases, or begins to operate after the Date of Lodging;

f.      "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXIV (Appendices));

g.      "Convert," "Conversion," or "Converted" shall mean the retrofit of an appliance to use only Advanced Refrigerants or to use only exempt Refrigerants set forth in 40 C.F.R. § 82.154(a)(1), or a Retirement of an appliance such that any Retired appliance may be replaced only by an appliance that uses only Advanced Refrigerants or uses only exempt Refrigerants set forth in 40 C.F.R. § 82.154(a)(1);

h.      "Covered Refrigeration Equipment" shall mean refrigeration equipment at a Store or Manufacturing Facility with a Full Charge of 50 pounds or more of Refrigerant, owned or operated by Defendant, including commercial refrigeration appliances, comfort cooling appliances, and units used for industrial process refrigeration;

i.      "Date of Lodging" shall mean the date that this Consent Decree is filed with the Court for the public comment period pursuant to Section XX (Public Participation);

j.      "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

k.      "Defendant" shall mean The Kroger Co., an Ohio corporation, and those wholly owned entities identified in Appendix B;

l.      "DOJ" means the United States Department of Justice and any of its successor departments or agencies;

m.      "Effective Date" shall have the definition provided in Section XVI;

n.      "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies;

o.      "Existing Commercial Refrigeration Appliances" shall mean any commercial refrigeration appliance that has a Full Charge of 50 pounds or more of Refrigerant located at a Store as of the Date of Lodging. Each Existing Commercial Refrigeration Appliance is identified in Appendix F;

p.      "Existing Comfort Cooling Appliances" shall mean any comfort cooling appliance that has a Full Charge of 50 pounds or more of Refrigerant located at a Store as of the Date of Lodging. Each Existing Comfort Cooling Appliance is identified in Appendix F;

9

q.      "Existing Industrial Process Refrigeration Units" shall mean the following industrial process refrigeration equipment at Defendant's La Habra Bakery, located at 850 S. Cypress Street, La Habra California 90631: (1) Main Refrigeration System; and (2) Yeast Chiller;

r.      "Full Charge" shall have the definition provided in 40 C.F.R. § 82.152, except that "refrigerant" shall have the meaning of "Refrigerant" set forth in this Paragraph;

s.      "GWP Value" of a Refrigerant shall be the global warming potential value published by its manufacturer;

t.      "Initial Response Actions" shall mean certain of the response actions identified in the Self-Evaluation Report and described in Paragraph 18 and Appendix D;

u.      "Major Remodel" shall mean a Store remodel of existing retail space with a total cost of $3,000,000 or more, completed during the First RY, Second RY or Third RY;

v.      "Manufacturing Facility" shall mean any facility that contains one or more refrigeration units that are used for industrial process refrigeration as defined in 40 C.F.R. § 82.152 that is owned or operated by Defendant at any time as of the Date of Lodging through the date of termination of this Consent Decree in accordance with Section XIX (Termination). Appendix G lists all Manufacturing Facilities as of the Date of Lodging;

w.      "New Commercial Refrigeration Appliance" shall mean any commercial refrigeration appliance that has a Full Charge of 50 pounds or more of Refrigerant located at a Store that Defendant acquires, first leases, or begins to operate after the Date of Lodging;

x.      "New Industrial Process Refrigeration Unit" or "IPRU" shall mean any refrigeration units that are used for industrial process, as defined in 40 C.F.R. § 82.152, that has a

10

Full Charge of 50 pounds or more of Refrigerant located at a Manufacturing Facility that Defendant acquires, first leases, or begins to operate after the Date of Lodging;

y.  "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter;

z.  "Parties" shall mean the United States and the Defendant;

aa.  "Refrigerant" shall mean any substance used as a heat transfer fluid or gas that provides a cooling effect, including, but not limited to ozone-depleting substances. "Refrigerant" shall not include: (i) secondary loop fluid, such as propylene glycol, in a secondary loop refrigeration system; and (ii) those substances identified as exempt under 40 C.F.R. § 82.154(a);

bb.  "Refrigerant Compliance Management Plan" shall mean the Refrigerant Compliance Management Plan (attached as Appendix C and incorporated into this Consent Decree), prepared by Defendant and approved by EPA, that is designed to ensure compliance with Subchapter VI of the Act, 42 U.S.C. §§ 7671-7671q, the Subpart F Regulations, and this Consent Decree, by improving Defendant's Refrigerant emissions management and recordkeeping systems. The Refrigerant Compliance Management Plan includes any subsequent amendments or changes to such plan made in accordance with Paragraph 14 of this Consent Decree;

cc.  "Refrigerant Year" or "RY" shall mean the period between January 1 of each calendar year beginning January 1, 2026 and ending December 31 of the same calendar year, as delineated in the table below:

11

| Refrigerant Year | Dates |
|---|---|
| First RY | 1/1/2026-12/31/2026 |
| Second RY | 1/1/2027-12/31/2027 |
| Third RY | 1/1/2028-12/31/2028 |
| Fourth RY | If needed, 1/1/2029-12/31/2029 |
| Fifth and subsequent RYs | If needed, 1/1/2030-12/31/2030, etc. |

dd.     "Retire," or "Retired," shall have the definition provided in 40 C.F.R. § 82.152;

ee.     "Section" shall mean a portion of this Decree identified by a Roman numeral;

ff.     "Store" shall mean any grocery store that contains any Covered Refrigeration Equipment and is owned or operated by Defendant at any time as of the Date of Lodging through the date of termination of this Consent Decree in accordance with Section XIX (Termination). Appendix E identifies a listing of all Stores as of the Date of Lodging;

gg.     "Transferee" shall mean a third-party that is not owned or controlled by Defendant; and

hh.     "United States" shall mean the United States of America, acting on behalf of EPA.

## V.     CIVIL PENALTY

9.     Within 30 Days after the Effective Date, Defendant shall pay, as a civil penalty, the sum of $2,500,000, together with interest accruing from the Date of Lodging, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.

12

10.     Defendant shall pay the civil penalty due, together with interest, by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Southern District of Ohio after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Vice President and Chief Compliance Officer
> The Kroger Co.
> 1014 Vine Street
> Cincinnati, OH 45202

on behalf of Defendant. Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XV (Notices).

11.     At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email in accordance with Section XV (Notices); and (iii) to EPA in accordance with Section XV (Notices). Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States of America v. The Kroger Co.* and shall reference the CDCS Number and DOJ case number 90-5-2-1-12428.

12.     Defendant shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal or state income taxes.

13

## VI.     COMPLIANCE REQUIREMENTS

A.     <u>Refrigerant Compliance Management Plan</u>

13.     Starting no later than 30 Days after the Date of Lodging, Defendant shall fully and continuously implement the Refrigerant Compliance Management Plan (Appendix C) for all Covered Refrigeration Equipment.

a.     Notwithstanding any other provision of this Consent Decree to the contrary, except as otherwise set forth in Paragraph 13.b, for all Covered Refrigeration Equipment that Defendant acquires, newly leases, or begins to operate after the Date of Lodging, Defendant shall fully and continuously implement the Refrigerant Compliance Management Plan within six months after the date that Defendant acquires, first leases, or begins to operate such Covered Refrigeration Equipment.

b.     Notwithstanding any other provision of this Consent Decree to the contrary, Defendant shall have no obligation to implement the Refrigerant Compliance Management Plan at any Store or Manufacturing Facility transferred to a Transferee after the Date of Lodging and any failure by the Transferee to implement the Refrigerant Compliance Management Plan at such Store or Manufacturing Facility shall not constitute a violation of this Consent Decree.

c.     A violation of the Refrigerant Compliance Management Plan shall be a violation of this Consent Decree.

14.     <u>Revisions to Refrigerant Compliance Management Plan</u>

a.     Prior to implementing any amendments or changes to the Refrigerant Compliance Management Plan, Defendant shall submit a revised Refrigerant Compliance Management Plan to EPA along with a letter identifying the amendments or changes. The

14

Refrigerant Compliance Management Plan shall automatically be deemed amended or changed by such proposed amendments or changes 60 Days after the EPA has received Defendant's submission, unless the EPA notifies Defendant in writing prior to such date that it declines to approve such amendments or changes and provides written comments.

b. Within 60 Days of receiving EPA's written notification, Defendant shall either: (i) revise the Refrigerant Compliance Management Plan consistent with EPA's written comments and resubmit the revised Refrigerant Compliance Management Plan to EPA; (ii) withdraw the submitted proposed amendments or changes to the Refrigerant Compliance Management Plan and notify EPA of such withdrawal; or (iii) invoke Dispute Resolution under Section XI of this Consent Decree.

B. Company-Wide Average ODS Leak Rate

15. For all Class I or Class II ozone-depleting substances, as identified in 40 C.F.R. Part 82, Subpart A, Apps. A and B, Defendant shall achieve a Company-Wide Average ODS Leak Rate that is at or below 9.5% percent for the each of the First, Second, and Third RYs, respectively, and for subsequent RYs if required by Paragraph 16.

16. If Defendant fails to achieve a Company-Wide Average ODS Leak Rate that is at or below 9.5% for any of the First, Second, or Third RYs, or any RY thereafter, if applicable, Defendant shall pay stipulated penalties pursuant to Section IX of this Consent Decree and take the actions set forth in this Paragraph 16.

a. Within 90 Days following the end of any RY in which Defendant failed to achieve a Company-Wide Average ODS Leak Rate that is at or below 9.5% in accordance with Paragraph 15, Defendant shall submit to EPA a proposed Corrective Action Plan for EPA approval in accordance with Paragraphs 16.b-f, below.

15

b. The proposed Corrective Action Plan shall include a description of all actions taken or to be taken to ensure that Defendant achieves a Company-Wide Average ODS Leak Rate that is at or below 9.5% for the next RY and, with respect to actions not already completed, a schedule for their implementation.

c. EPA shall, in writing, either: (i) approve the proposed Corrective Action Plan; (ii) approve the proposed Corrective Action Plan upon specified conditions; (iii) approve part of the proposed Corrective Action Plan and disapprove the remainder with comments; or (iv) disapprove the proposed Corrective Action Plan with comments.

d. Within 30 Days of receiving any EPA written comments or conditions on approval or disapproval, Defendant shall either: (i) revise the Corrective Action Plan consistent with EPA's written comments and conditions and submit the revised Corrective Action Plan to EPA for final approval; or (ii) invoke Dispute Resolution under Section XI of this Consent Decree.

e. To the extent the proposed Corrective Action Plan requires action prior to receipt of EPA's approval or disapproval, Defendant shall cause the proposed Corrective Action Plan to be implemented in accordance with the schedule set forth therein until EPA approves a Corrective Action Plan or a Corrective Action Plan is determined pursuant to the Dispute Resolution process.

f. Upon receipt of EPA's approval of the Corrective Action Plan, or upon determination of the Corrective Action Plan pursuant to Dispute Resolution, Defendant shall implement the Corrective Action Plan in accordance with the schedule set forth therein.

17. If Defendant fails to achieve a Company-Wide Average ODS Leak Rate that is at or below 9.5% for the Third RY or subsequent RY, if applicable, Defendant shall continue to be

subject to that Company-Wide Average ODS Leak Rate and shall continue to implement the Corrective Action Plan established pursuant to Paragraph 16 during each subsequent RY until it achieves a Company-Wide Average ODS Leak Rate that is at or below 9.5% for a RY.

C.  Initial Response Actions

18.  Defendant has completed each of the Initial Response Actions identified in Appendix D to this Consent Decree (the "Initial Response Actions") prior to the Date of Lodging. The Initial Response Actions were described in the Self-Evaluation Report to be the highest priority for refrigeration units to be Converted.

D.  Transfer of Existing Commercial Refrigeration Appliances, Existing Comfort Cooling Appliances, and Existing Industrial Process Refrigeration Units and Conversion to Advanced Refrigerants

19.  Compensatory Conversions

a.  For each Existing Commercial Refrigeration Appliance, Existing Comfort Cooling Appliance, or Existing Industrial Process Refrigeration Unit that Defendant transfers to a Transferee, Defendant shall Convert other Covered Refrigeration Equipment with a Full Charge equal to or greater than the Full Charge of the transferred Appliance or Unit. Such Conversions shall be referred to herein as "Compensatory Conversions." Compensatory Conversions shall occur not later than twelve months after the transfer of the Existing Commercial Refrigeration Appliances, Existing Comfort Cooling Appliances, or Existing Industrial Process Refrigeration Units.

b.  Each Additional Upgrade that Defendant completes beyond the 600 Additional Upgrades required under Paragraph 22 may be considered to be a Compensatory Conversion, as long as the Existing Commercial Refrigeration Appliance or Existing Comfort Cooling Appliance Converted has a Full Charge greater than or equal to the transferred Existing Commercial Refrigeration Appliance or Existing Comfort Cooling Appliance.

E.      New Commercial Refrigeration Appliances, New Industrial Process Refrigeration Units, Major Remodels, and Additional Upgrades

20.      Construction of New Commercial Refrigeration Appliances, New Industrial Process Refrigeration Units, and Major Remodels. Defendant shall ensure that all New Commercial Refrigeration Appliances, New Industrial Process Refrigeration Units, and Major Remodels commencing construction after the Date of Lodging use only Advanced Refrigerants.

21.      Conversion to Advanced Refrigerants at Existing Industrial Process Refrigeration Units.  Prior to the end of the Third RY, Defendant shall Convert all Existing Industrial Process Refrigeration Units.

22.      Conversion to Advanced Refrigerants at Existing Commercial Refrigeration Appliances. Prior to the end of the Third RY, Defendant shall Convert a total of 600 Existing Commercial Refrigeration Appliances that use Class I or Class II ozone-depleting substances, as defined in 40 C.F.R. § 82.152. The selection of Existing Commercial Refrigeration Appliances to be converted shall be made at Defendant's discretion. Such Converted Existing Commercial Refrigeration Appliances shall be referred to herein as "Additional Upgrades." Defendant shall Convert the 600 Existing Commercial Refrigeration Appliances as follows.

a.      First Conversion Phase. No later than the end of the First RY, Defendant shall Convert at least 175 Existing Commercial Refrigeration Appliances pursuant to this Paragraph 22. Except as provided in Paragraph 24, all Additional Upgrades commenced or completed on or after January 1, 2025, but before the Effective Date, shall also be credited to the first year.

b.      Second Conversion Phase. Unless 600 Additional Upgrades were performed pursuant to Paragraph 22.a., no later than the end of the Second RY, Defendant shall

18

ensure that at least 350 Existing Commercial Refrigeration Appliances are Converted pursuant to this Paragraph 22.

c. Third Conversion Phase. Unless 600 Additional Upgrades were performed pursuant to Paragraphs 22 a.-b. above, no later than the end of the Third RY, Defendant shall ensure that at least 600 Existing Commercial Refrigeration Appliances are Converted pursuant to this Paragraph 22.

23. At least 25% of the Existing Commercial Refrigeration Appliances to be Converted as "Additional Upgrades" in each conversion phase above shall be selected from those Existing Commercial Refrigeration Appliances that ranked in the top 20% of Defendant's Existing Commercial Refrigeration Appliances in terms of the total amount of pounds of Refrigerant added during the prior 12-month period.

24. No Existing Commercial Refrigeration Appliance that was addressed as an Initial Response Action may be credited as an Additional Upgrade.

25. Defendant may Convert any Existing Comfort Cooling Appliance to meet the requirements of Paragraph 22, which shall also constitute an Additional Upgrade. Defendant may not sell any component (compressor, condenser, etc.) of an appliance Retired or Converted under Paragraph 22 and this Paragraph 25 unless Defendant first obtains written approval from EPA.

VII.    PARTICIPATION IN GREENCHILL PROGRAM

26. This Consent Decree shall not affect Defendant's participation in the GreenChill Program except that, until the Consent Decree is terminated pursuant to Section XIX (Termination) of this Consent Decree, Defendant's Stores shall not be eligible for annual GreenChill Environmental Achievement Awards, nor shall Defendant be eligible for such awards on a corporate basis.

## VIII.   REPORTING REQUIREMENTS

27.     No later than 90 Days after the end of each RY and continuing until the Court has terminated this Consent Decree pursuant to Paragraph 84, Defendant shall submit to the DOJ and EPA a Compliance Report that includes the following information for the completed RY ("Reporting Period"):

a.      a list of all Stores and Manufacturing Facilities, specifically identifying all new Stores, new Manufacturing Facilities, openings, closings, transfers of ownership or operation, and Major Remodels;

b.      identify each Covered Refrigeration Equipment at each Store and Manufacturing Facility in which Defendant added Refrigerant during the Reporting Period, including the date of each addition, description of the repair, the amount of each addition in weight, the type of refrigerant added, and the leak rate as defined in 40 C.F.R. § 82.152 calculated for each addition;

c.      a list of Additional Upgrades completed during the Reporting Period;

d.      a list of Additional Upgrades that are in-process (with expected completion date) during the Reporting Period;

e.      each Compensatory Conversion;

f.      Company-Wide Average Leak Rate, broken down by Refrigerant class, including an explanation of how the leak rate was calculated;

g.      Company-Wide Average ODS Leak Rate, including an explanation of how the leak rate was calculated;

h.      a certification that Defendant has complied with the Refrigerant Compliance Management Plan during the Reporting Period, or a description of all incidences of

20

noncompliance with the Refrigerant Compliance Management Plan during the Reporting Period combined with a certification that Defendant has otherwise complied with the Refrigerant Compliance Management Plan;

i.      a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the Compliance Report is due, Defendant shall so state in the Compliance Report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the Compliance Report, including a full explanation of the cause of the violation, within 60 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph 27 or Paragraph 29 relieves Defendant of its obligation to provide the notice required by Section X (Force Majeure);

j.      the following information regarding Advanced Refrigerants in each New Commercial Refrigeration Appliance, New Industrial Process Refrigeration Unit, Major Remodel, and Additional Upgrade: (1) Store and Manufacturing Facility location; (2) Whether the New Commercial Refrigeration Appliance, New Industrial Process Refrigeration Unit, Major Remodel or Additional Upgrade, was installed, acquired or Converted during the previous RY; (3) Advanced Refrigerant used; (4) Full Charge; and (5) appliance and/or unit type.

28.     Data in each Compliance Report submitted by Defendant under this Section shall be submitted in Microsoft Excel or equivalent spreadsheet form. Defendant shall submit the data to EPA in electronic form in accordance with the requirements of Section XV (Notices) of this Consent Decree.

29. Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify the Region 5 Duty Office by telephone at (312) 353-2318 or by email to EPA at the address set forth in Section XV (Notices) as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This notification is in addition to the requirements set forth in Paragraph 27.

30. Each Compliance Report shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

31. This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

32. The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

33. Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

34. Defendant may request an extension of the deadline for a period not greater than 30 Days for submitting a Compliance Report pursuant to this Section, provided that such request

22

is made 30 Days prior to the deadline for submission of the Compliance Report. The United States may grant or reject the request in its sole unreviewable discretion.

IX.     STIPULATED PENALTIES

35.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

36.     Late Payment of Civil Penalty. If Defendant fails to pay the civil penalties required to be paid under Section V of this Consent Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $2,500 for each Day that the payment is late.

37.     Compensatory Conversions. If Defendant fails to implement a Compensatory Conversion as required by Paragraph 19 of this Consent Decree, Defendant shall pay a stipulated penalty of $35,000 for each such Conversion.

38.     Refrigerant Compliance Management Plan. For each failure to implement any requirement of the Refrigerant Compliance Management Plan as required by Section VI.A. Defendant shall pay a stipulated penalty of $500 per violation of each requirement per appliance per Day until the date on which the applicable requirement is satisfied.

39.     Company-Wide Average ODS Leak Rate. If Defendant fails to achieve a Company-Wide Average ODS Leak Rate that is at or below 9.5 percent for each RY that the Consent Decree is in operation in accordance with Section VI.B, Defendant shall pay stipulated penalties as set forth below.  Penalties for a Second Violation are applicable whenever Defendant

23

violates the ODS Leak Rate if it has violated the ODS Leak Rate for a previous RY, and Penalties for a Third or Subsequent Violation are applicable whenever Defendant has violated the ODS Leak Rate for two or more RYs.

| Company-Wide Average ODS Leak Rate | First Violation | Second Violation | Third and Each Subsequent Violation |
|---|---|---|---|
| Above 9.5 percent, but at or below 11.5 percent. | $175,000 | $350,000 | $550,000 |
| Above 11.5 percent, but at or below 13.5 percent | $275,000 | $550,000 | $700,000 |
| Above 13.5 percent | $425,000 | $700,000 | $1,300,000 |

40.     Advanced Refrigerants. If Defendant uses a Refrigerant other than an Advanced Refrigerant in any Covered Refrigeration Equipment that is a New Commercial Refrigeration Appliance, New Industrial Process Refrigeration Unit, Major Remodel, or Additional Upgrade, in violation of Paragraphs 20-22, Defendant shall pay a stipulated penalty of $1,000 per Day of Refrigerant use in each such Covered Refrigeration Equipment.

41.     Reporting Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VIII (Reporting Requirements), unless an extension of the deadline is requested from EPA in advance of the deadline pursuant to Paragraph 34 and EPA grants such request:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 500 | 1st through 14th Day |
| $ 750 | 15th through 30th Day |
| $1,000 | 31st Day and beyond |

42.     If Defendant fails to comply with any other Consent Decree term, condition, or requirement that does not have a specific stipulated penalty set forth in Paragraphs 36 through 41 above, Defendant shall pay a stipulated penalty of $500 per Day.

24

43. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

44. Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

45. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

46. Stipulated penalties shall continue to accrue as provided in Paragraph 43 during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in Paragraph 46 c., below.

c. If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

47. Obligations Prior to the Effective Date. Upon the Effective Date, the stipulated penalty provisions for violations of Paragraph 29 (related to reporting requirements if there is an

25

immediate threat to the public health or welfare or the environment) and Paragraph 38 (related to failure to implement any requirement of the Refrigerant Compliance Management Plan as required by Section VI.A) shall be retroactively enforceable with regard to any and all violations of duties Defendant is required to perform as of the Date of Lodging but prior to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

48.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 10 and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

49.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph 49 shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

50.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

51.     Non-Exclusivity of Remedy. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to, an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any

26

statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## X.      FORCE MAJEURE

52.      "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (i) as it is occurring and (ii) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

53.      If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic transmission to EPA, within seven days of when Defendant first knew that the event might cause a delay. Within 15 Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the duration or anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures taken or to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendant shall include with any notice all available

27

documentation supporting the claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

54.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

55.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

56.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 30 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay, or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 52 and 53, above. If Defendant

28

carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI.     DISPUTE RESOLUTION

57.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

58.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

59.     Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

60. The United States shall send Defendant its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position is binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

61. Judicial Dispute Resolution. Defendant may seek judicial review of the dispute by filing with the Court and submitting to DOJ and EPA, in accordance with Section XV (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion: (i) must be filed within 14 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (ii) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 58, unless the Plaintiff raises a new issue of law or fact in the Statement of Position; (iii) shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation; and (iv) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

62. The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

63. Standard of Review.

a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 59 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any

other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 59, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the Objectives (as set forth in Section III) of the Consent Decree.

64. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 46. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII. INFORMATION COLLECTION AND RETENTION

65. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Store or Manufacturing Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

31

   c.  obtain documentary evidence, including photographs and similar data; and

   d.  assess Defendant's compliance with this Consent Decree.

  66. Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control that are relevant to demonstrate Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph 66.

  67. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (i) the title of the document, record, or information; (ii) the date of the document, record, or information; (iii) the name and title of each author of the document, record, or information; (iv) the name and title of each addressee and recipient; (v) a description of the subject of the document, record, or information; and (vi) the privilege asserted by Defendant. However, no

documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

68     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

69.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

70.     This Consent Decree resolves the civil claims of the United States against Defendant for any violations of 40 C.F.R. §§ 82.156(i), 82.157(c), or 82.166(k) at the Stores and Manufacturing Facilities arising out of the facts and events that occurred prior to the Date of Lodging, including civil claims of the United States for the violations alleged in the Complaint through the Date of Lodging.

71.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 70. The United States further reserves all legal and equitable remedies to address any conditions if there is or may be an imminent and substantial endangerment to the

public health or welfare or the environment arising at, or posed by, any of Defendant's Stores or Manufacturing Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

72. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Stores and Manufacturing Facilities, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 70.

73. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 et seq., or with any other provisions of federal, state, or local laws, regulations, or permits.

74. This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

34

75. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV. COSTS

76. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XV. NOTICES

77. Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

*As to DOJ by email (preferred):*

EESCaseManagement.ENRD@usdoj.gov
Re: DJ # 90-5-2-1-12428

*As to DOJ by mail:*

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-5-2-1-12428

*As to EPA (by email only):*

Compliance Tracker
U.S. Environmental Protection Agency
Region 5, Chicago
E-mail: R5AirEnforcement@epa.gov

*As to Defendant:*

The Kroger Co.
1014 Vine Street
Cincinnati, OH 45202
Attention: Chief Compliance Officer

The Kroger Co.
1014 Vine Street
Cincinnati, OH 45202
Attention: General Counsel

78.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

79.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, as applicable, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

36

## XVI.   EFFECTIVE DATE

80.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII.   RETENTION OF JURISDICTION

81.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. MODIFICATION

82.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

83.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 63, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

37

XIX.    TERMINATION

84.      The requirements for termination of this Consent Decree include: (1) completion of the requirements of Section VI (Compliance Requirements) and Section VIII (Reporting Requirements); (2) payment of the civil penalty and any accrued interest as required by Section V (Civil Penalty); and (3) payment of any accrued stipulated penalties required by Section IX (Stipulated Penalties). After Defendant has complied with the requirements for termination, Defendant may submit to DOJ and EPA a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

85.      Following receipt by DOJ and EPA of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

86.      If the United States does not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section XI of this Consent Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 59 of Section XI, until 60 Days after service of its Request for Termination.

XX.    PUBLIC PARTICIPATION

87.      This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate,

38

improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

## XXI.    SIGNATORIES/SERVICE

88.    Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

89.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by email and/or mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII.  INTEGRATION

90.    This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the subject matter of the Decree herein.

## XXIII. FINAL JUDGMENT

91.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

XXIV. APPENDICES

92.     The following appendices are attached to and part of this Consent Decree:

"Appendix A" contains the Company-Wide Average Leak Rate Formulas.

"Appendix B" is a list of those wholly owned entities that are included within the definition of "Defendant."

"Appendix C" is the Refrigerant Compliance Management Plan.

"Appendix D" is the list of completed Initial Response Actions.

"Appendix E" is the list of all Stores as of the Date of Lodging.

"Appendix F" is the list of Existing Commercial Refrigeration Appliances and Existing Comfort Cooling Appliances.

"Appendix G" is the list of Manufacturing Facilities as of the Date of Lodging.

XXV.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

93.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 162-21(b)(2), performance of Section II (Applicability), Paragraph 5; Section VI (Compliance Requirements), Paragraphs 13-15 and 19-23; Section VIII (Reporting Requirements), Paragraphs 27-28 and 30; and Section XII (Information Collection and Retention), Paragraphs 66-67, is restitution, remediation, or required to come into compliance with law.

Dated and entered this _____ day of _____, 2026.

_____

United States District Judge
Southern District of Ohio

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. The Kroger Co.* (S.D. Ohio), subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA:

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

STEVEN ELLIS  Digitally signed by STEVEN ELLIS
Date: 2026.04.27 17:04:54 -04'00'

STEVEN D. ELLIS
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

41

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. The Kroger Co.* (S.D. Ohio), subject to the public notice and comment provisions of 28 C.F.R. § 50.7:


FOR PLAINTIFF UNITED STATES OF AMERICA:


ROBERT KAPLAN

Digitally signed by ROBERT KAPLAN
Date: 2026.04.14 16:10:32 -05'00'

_____

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency, Region 5


ELYSE VOYEN

Digitally signed by ELYSE VOYEN
Date: 2026.04.15 08:48:46 -05'00'

_____

ELYSE S. VOYEN
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5

WE HEREBY CONSENT to the entry of this Consent Decree in United States v. The Kroger Co. (S.D. Ohio), subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR DEFENDANT THE KROGER CO.:

Date: _____3- 24-26_____

GEORGE H. VINCENT
Executive Vice President, Secretary and
General Counsel
The Kroger Co.

43